IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN W. COMRIE,<br><br>    Plaintiff,<br><br>v.<br><br>IPSCO INC., a Canadian Corporation; IPSCO ENTERPRISES INC. a Delaware Corporation; SSAB SVENSKT STAL AB, a Swedish Corporation; IPSCO ENTERPRISES INC. U.S. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN and IPSCO INC. BENEFITS COMMITTEE,<br><br>    Defendants. | No. 08-cv-03060<br><br>Judge Darrah<br>Magistrate Judge Ashman |

**FIRST AMENDED COMPLAINT**

Plaintiff John Comrie, through counsel, complains against the defendants as follows:

1.    Plaintiff John W. Comrie, a retired employee of defendants IPSCO Inc. and IPSCO Enterprises, Inc. ("IE, Inc."), collectively "IPSCO," and participant in defendant IPSCO ENTERPRISES INC. U.S. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, seeks redress against them, defendant parent SSAB SVENSKT STAL AB ("SSAB"), and defendant IPSCO INC. BENEFITS COMMITTEE ("PBC") for breach of their obligations concerning Comrie's employment.

**PARTIES**

2.    Plaintiff John Comrie was a citizen and resident of Canada from birth until May 24, 1999. Since that date he has been a resident of the United States. Comrie became a United States citizen in October 2006. He is now a citizen of, and resides in, the State of Kentucky.

3.    Defendant IPSCO Inc. is a Canadian corporation which (until May of 2008) had its principal place of business in Lisle, Illinois. IPSCO Inc. was a publically-held company for more

1

than fifty years. Its shares were traded on the Toronto Stock Exchange and (after 1996) on the New York Stock Exchange. By July 18, 2007 SSAB had completed the purchase of all shares of IPSCO Inc., and owned and operated IPSCO Inc. when Comrie retired (on July 31, 2007) and thereafter sought retirement benefits.

4. IE Inc. is a Delaware corporation, with its former principal place of business in Lisle, Illinois. Until July 18, 2007 it was wholly-owned by IPSCO Inc. and was the main holding company for all the United States assets of IPSCO Inc. Since that date IE Inc. has become a wholly-owned subsidiary controlled directly or indirectly by SSAB. It has withdrawn from Illinois for business purposes and, on information and belief, it is currently inactive.

5. Defendant SSAB is a Swedish corporation, with its principal place of business in Sweden. SSAB has maintained an office in Lisle, Illinois. After acquiring IPSCO Inc. in July, 2007, SSAB and IPSCO Inc. had interlocking officerships. SSAB continued to report on its website as recently as May 2008 that it operated a "North American Division Office" in Lisle. At least two members of "SSAB's Group Management," David Britten and John Tulloch (both serving at different times as Executive Vice-President, North American Division of SSAB) worked in Lisle. On information and belief, significant decisions regarding the business of IPSCO Inc, including those concerning Comrie, have been made or controlled by SSAB.

6. Defendant IPSCO ENTERPRISES INC. U.S. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN ("U.S. SERP") is an employee benefit plan in which plaintiff is a participant. Defendant IPSCO INC. BENEFITS COMMITTEE ("PBC") is the plan administrator.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action under 29 U.S.C. § 1132(1) and (2), to the extent claims are brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. The Court also has diversity jurisdiction over Plaintiff's non-ERISA claims pursuant to 28 U.S.C. § 1332(a)(1) and (2) in that this is an action between citizens of different states and/or subjects of a foreign state and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction over the non-ERISA claims under 28 U.S.C. § 1367 because the claims have a "common nucleus of operative fact" and would "ordinarily be expected to [be tried] all in one judicial proceeding."

8.  Venue in this District is proper under 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, where IPSCO was headquartered and Comrie worked from 1999 to 2007. Venue is also proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the U.S. SERP is administered in this district, the breach is alleged to have occurred here and the ERISA defendants reside here.

## FACTS COMMON TO ALL COUNTS

### A. Comrie Contract with IPSCO to Transfer to the United States

9.  Comrie, an attorney, began working for IPSCO Inc. on July 15, 1980 at its then-corporate headquarters in Regina, Saskatchewan, Canada. IPSCO retained Comrie to establish IPSCO's first legal department. He worked continuously for IPSCO until his involuntary retirement on July 31, 2007. He was also an officer of IPSCO Inc. from 1985 until his retirement.

10. From 1981 onward, IPSCO actively moved employees back and forth between Canada and the United States. To induce officers to relocate to the United States, IPSCO

developed pension plan arrangements under which the company could promise such employees that the design of their United States retirement plan would not result in a material reduction of the retirement benefits they would have received had they remained in Canada, including that such employees would get full credit for their years of service regardless of whether such years were served out in the United States or Canada.

11. Early in 1998, the Board of Directors decided to move the operational headquarters of IPSCO Inc. to Lisle, Illinois during the summer of 2000.

12. On December 6, 1998 Comrie was appointed by the IPSCO Inc. Board of Directors to the position of Vice President, Chief Legal Officer and Secretary, and was asked to relocate to Illinois. Comrie, a citizen of Canada for fifty years, faced a difficult choice in moving his family. Comrie's spouse was gainfully employed in Canada as a professor at the University of Regina; replacing her income after the move was an important consideration. By April 1999 she was able to identify and secure an offer of employment from a small private university in Aurora, Illinois where she had to take a 40% pay reduction under a one-year contract without any tenure or any defined benefit pension, both of which she had in Canada.

13. Leading up to the IPSCO Inc. Annual General Meeting in Regina on Friday, April 23, 1999, Comrie had extensive discussions with Edwin Tiefenbach, the then-Chief Financial Officer of IPSCO Inc and IE Inc., as well as Alan Harris, the then Director of Compensation and Benefits for IPCSO Inc. and IE Inc., regarding his relocation. In addition to other relocation promises made with respect to income, moving costs, housing loans and similar matters, both Tiefenbach and Harris repeatedly assured and promised Comrie that if he agreed to relocate to the United States, then under IPSCO's executive pension plan arrangements, he would not

suffer a material reduction of the retirement benefits that he would have received had he remained in Canada, including that he would get full credit for his years of service regardless of whether such years were served in the United States or Canada and that there would be no material change in the security of his retirement benefits.

14. Specifically, on Monday, April 19, 1999 (and at least two occasions prior), Tiefenbach and Harris both assured and promised Comrie on behalf of IPSCO that if he agreed to relocate to the United States:

a) he would get full credit for all his years of service for benefit purposes regardless whether he earned them in Canada or in the United States;

b) he would become a participant in IPSCO ENTERPRISES INC. U.S. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN which would provide him with defined benefit retirement benefits using and calculating "years of service" in the same manner used under his Canadian pension plan; and

c) there would be no other material differences from the benefits he would have received from his Canadian plan, including the security of his retirement benefits.

15. On Friday, April 23, 1999, Roger Phillips, the President of IPSCO Inc. and the Chairman of IE Inc., met with Comrie to discuss whether he was willing to agree to relocate to the United States in light of certain decisions made by the IPSCO Board of Directors earlier that day. Phillips also reaffirmed that IPSCO would honor the prior assurances and promises made by Tiefenbach and Harris on and before April 19, 1999, regarding relocation commitments including Comrie's retirement plan if Comrie relocated.

16. On Monday, April 26, 1999 Comrie again met with Phillips and accepted the above offer based on the foregoing promises by IPSCO (the "April 26th Agreement"). Comrie and his wife immigrated to the United States on May 24th, 1999, and have remained ever since.

**B. ERISA Retirement Plan for IPSCO Executives (U.S. SERP)**

17.     The Supplemental Executive Retirement Plan ("Canadian SERP") applicable to Canadian executives governed retirement benefits for select IPSCO executives transferred to the United States during the 1990s, including plaintiff. As IPSCO moved its operational headquarters to Lisle, Illinois, the Canadian SERP became the primary retirement plan for all IPSCO executives who had moved from Canada to the United States.

18.     On or about November 8, 2005, Ray Rarey, the IPSCO Vice President and Chief Human Resources Officer, gave Comrie a memo (the "Rarey Memo") attaching a new and restated retirement plan, the "IPSCO ENTERPRISES INC. U.S.SUPPLEMENTAL EXECUTIVE RETIRE- MENT PLAN (As Amended and Restated Effective as of January 1, 2005)" ("U.S. SERP"). The Rarey Memo confirmed Comrie's participation in the U.S. SERP and stated that at "retirement you will receive a pension benefit based on the average of your earnings (as defined in Appendix A) during the five consecutive calendar years of continuous service in which your earnings were highest multiplied by 2% for each year of service with the Company . . . "

19.     "**Earnings**" under the U.S. SERP for purposes of calculating Comrie's retirement benefits includes amounts earned through incentive awards under the Long Term Incentive Plan ("LTIP") and Management Incentive Plan ("MIP"). Under the U.S. SERP, retirement benefits are calculated by first determining average "Final Earnings" as defined in § 2 of Appendix A of the U.S. SERP. That paragraph states in its entirety (emphasis added):

> 2.     **Final Earnings** – For Group Executives and U.S. Expatriates, the final earnings means the average annual **Earnings** of the Participant during the five consecutive calendar years of Continuous Service in which Earnings were highest, and shall mean the average annual **Earnings** during the actual period of Continuous Service if such service is less than five calendar years. For all purposes of the Appendix A, and

without regard to any provision of the Plan to the contrary, a Participant's Earnings shall not include any portion of compensation attributable to a bonus.

The term "**Earnings**" is defined in § 1.09 of the U.S. SERP, as "'**Compensation**' for the calendar year (prorated for partial years) as defined under the IPSCO Enterprises Inc. Retirement Savings and Profit Sharing Plan . . . ."

20. "**Compensation**," in turn, is defined in the Summary Plan Description ("SPD") for the "IPSCO Enterprises Inc Retirement Savings and Profit Sharing Plan," stating:

**Contributions to the Plan**

"For purposes of calculating contributions to the plan, your compensation includes the total pay you received from IPSCO during the plan year in which you were a participant.

"Total Pay includes your base salary, bonuses, **incentive pay,** overtime and commissions..." [Emphasis added]

The SPD, by operation of law, controls any contrary language in the plan instrument itself.

21. The MIP and LTIP incentive awards made up a substantial part of Comrie's earnings for purposes of Comrie's retirement benefits, as set forth in the below table:

|  | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|
| Base Salary | 135,661 | 132,750 | 135,937 | 140,000 | 143,625 | 95,390 |
| MIP | 4,800 | 0 | 7,700 | 109,484 | 129,080 | 126,967 |
| LTIP | 2,111 | 0 | 77,513 | 851,792 | 145,350 | 561,621 |

**C. Comrie's Involuntary Retirement from IPSCO (July 31, 2007)**

22. From May 1999 into 2007, Comrie continued to devote his full time and effort to the affairs of IPSCO in reliance upon the promises given to him regarding his retirement plan arrangements with the company in the April 26th Agreement. Comrie continued to provide

legal services to IPSCO both, within and without the legal department, and also provided other significant services in trade and government relations and public relations, reporting directly to IPSCO's President and Chief Executive Officer until immediately prior to his involuntary retirement in July, 2007. However, in late July, 2007, notwithstanding Comrie's excellent performance for more than eight years, the new President and CEO of both IPSCO Inc and IE Inc. told Comrie that, effective upon the closing or the purchase of IPSCO by SSAB, Comrie would no longer report to the President, but would instead report to a new and junior Vice President, and that his job responsibilities were being reduced. That demotion constituted an "involuntary retirement" as defined under the U.S. SERP, § 9(e)(ii). Comrie involuntarily retired effective July 31, 2007.

### D. PBC Denial of Full Benefits under the U.S. SERP

23.     Comrie provided IPSCO a letter dated August 21, 2007 outlining his entitlement to retirement benefits under the U.S. SERP. He subsequently met with IPSCO representatives on October 4, 2007 to further outline his entitlement. Among other things, Comrie recounted the promises made to him by IPSCO regarding his retirement benefits in the April 26, 1999 Agreement which induced him to move to the United States in 1999 as described above.

24.     On October 30, 2007 Comrie received a letter from the IPSCO BENEFITS COMMITTEE ("PBC Decision") signed by Rarey as Chair of the IPSCO Pension Benefits Committee ("PBC") in which it substantially rejected Comrie's claim for benefits. Among other things, the PBC excluded from Final Earnings anything earned by Comrie through MIP or LTIP and did not credit his full years of service with IPSCO. Although Comrie timely appealed this

determination, on May 23, 2008 Comrie received a letter from the PBC (the "PBC Appeal Decision") that upheld the original determination.

25. In its decisions, the PBC did not construe the U.S. SERP that had been provided to Comrie with the Rarey Memo. Instead, it apparently relied upon a different document, a purported amendment with a new "Appendix A1" that had never previously been disclosed to Comrie, and which (lacking either a date or a signature) reveals no sign of ever having been adopted as a plan document. Comrie had no prior notice of this putative amendment.

26. The PBC miscalculated his years of "Continuous Service" and used the wrong currency conversion under the U.S. SERP § 13. The determination was also inconsistent with the promises made to Comrie prior to his relocation about the future of his retirement benefits.

### E. Severance Pay

27. Canadian law provides that all employees are entitled to reasonable notice of termination, or else the employer must pay severance in lieu of that notice period. For many years prior to Comrie's move to the United States, in compliance with Canadian law, IPSCO routinely paid severance to Canadian and American employees who were terminated without cause. The amount of severance pay under Canadian law increases commensurate with the difficulty in finding comparable employment, the degree of specialization of the position, the level of responsibility, the years of service, the age of the employee, the need to relocate and the need to retool for the job market and includes all base pay, benefits and incentive pay payments. Consistent with IPSCO's treatment of other executives with respect to severance, Comrie estimates that he was entitled to receive some 30 months' severance in lieu of notice.

28. Comrie was employed in Canada by IPSCO for 19 years before moving to the United States in reliance on the assurances described above. Comrie continued to be employed by IPSCO for another eight years before being involuntarily terminated. Approximately 75% of Comrie's employment career with IPSCO was spent in Canada.

29. Comrie's "involuntary retirement" as defined under the U.S. SERP, constitutes a "constructive dismissal" under Canadian law, entitling Comrie to compensation in lieu of notice. Notwithstanding, no such severance was paid to Comrie.

## COUNT I
## (ERISA Benefits and Anti-Cutback)

30. Comrie adopts and realleges paragraphs 1-26 as paragraph 30 of Count I as though fully set forth herein.

31. This claim is brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) against IPSCO ENTERPRISES INC. U.S. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, IPSCO INC. and the IPSCO INC. BENEFITS COMMITTEE.

32. Defendants unlawfully denied benefits to Comrie by deducting from his earnings the LTIP and MIP incentive payments, inconsistent with the definition of "compensation" contained in the SPD for the 401(k) plan, which required inclusion of all of Comrie's W-2 income for his last five years of employment, including "base salary, bonuses, [and] *incentive pay* . . . ."

33. Additionally, defendants denied Comrie of several years of service that would have increased the benefit amount and by applying the wrong currency conversion formula.

34. To the extent that the PBC relied upon a putative amendment of the U.S. SERP to deny Comrie all of his "compensation" for purposes of calculating his retirement benefits, *i.e.*, by excluding incentive awards, such amendment violates 29 U.S.C. § 1054(g)(1) because the

amendment would have the effect of reducing his vested retirement benefits by excluding incentive awards as "compensation." In addition, the U.S. SERP at § 17 itself provides that any amendment "may not reduce the Company's obligation with respect to the Participant below the amount to which he would have been entitled under the Plan as in effect immediately prior to such alteration." Such amendment is therefore unenforceable. Alternatively, the putative amendment violated 29 U.S.C. § 1054(h), as there was no notice of an amendment of the U.S. SERP to Comrie or others to redefine "compensation" to eliminate incentive awards for future benefit accrual. Under 29 U.S.C. § 1054(h)(6)(A), therefore, Comrie's benefits should therefore at a minimum be calculated by the provisions of the pre-amended, U.S. SERP.

WHEREFORE, Comrie respectfully prays for the entry of judgment in his favor and against Defendants, jointly and severally, for the benefits in full owing to Comrie under the U.S. SERP, plus interest, attorney's fees, costs and expenses, and all other appropriate relief.

## COUNT II
## (Breach of Contract)

35. Comrie adopts and realleges paragraphs 1-26 as paragraph 35 of this Count II.

36. This count is brought against Defendants IPSCO, IE Inc. and SSAB. Defendants entered into a contract with Comrie on April 26, 1999 – governed by Canadian law – under which Comrie agreed to relocate to the United States provided that he would not suffer a material reduction in the benefits that he would otherwise have earned in Canada, including that he would get full credit for his years of service regardless of whether such years were earned in the United States or Canada and that there would be no material change in the security of his pension. To the extent that such benefits are not available to Comrie under the

U.S. SERP, the above defendants are liable in damages to Comrie for the difference lost owing to the relocation.

37. When his retirement benefits were calculated by the PBC, the calculation failed to give him full credit for his years of service in Canada. Instead, under the formula applied by the PBC at Appendix A, ¶5, he lost the equivalent of three or more years of service in Canada.

38. In addition, Comrie came to learn that the United States retirement benefits were not secure in the event of the company's bankruptcy. The Canadian pension had been fully secured by a Letter of Credit provided by a Canadian Chartered Bank. Comrie was told that his benefits in the United States were secured by an Executive Compensation Trust ("ECT") and that, in the event of a change of control of IPSCO Inc., the ECT would provide the same protection as the Canadian pension plan because it was required to be fully funded. Comrie only learned in June 2007 that, in contrast to the Canadian pension, the "full funding" of the ECT in the United States did not now and would not in the future ever protect Comrie's retirement benefits from creditors of IPSCO in a bankruptcy situation. To protect his retirement savings from the claims of future IPSCO creditors (equivalent to the security he would have had in his Canadian pension), he was forced to take a lump sum distribution of his benefits.

39. Comrie substantially performed all his obligations under the contract. Yet he incurred a material reduction of the retirement benefits that he would have received had he remained in Canada, including that his years of service were reduced from 27 to 23.5 and there was no security for his pension benefits relative to the claims of creditors in the event of a bankruptcy of IPSCO of SSAB. Defendants, for their breach of contract, must make Comrie

whole to place him where he would have been with respect to these benefits had he stayed in Canada.

WHEREFORE, Comrie prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award damages, interest, costs, and other appropriate relief.

## COUNT III
### (Promissory Estoppel)

40. Comrie adopts and realleges paragraphs 1-26 and 35-39 as paragraph 40 of this Count III.

41. This count is brought against Defendants IPSCO, IE Inc. and SSAB. In the alternative to Count II, the promises made to Comrie with respect to his retirement benefits are enforceable by promissory estoppel under Canadian law. The promises made to Comrie were clear and unambiguous. As IPSCO foresaw and intended, Comrie reasonably relied upon these promises in agreeing to leave his native Canada and relocate to the United States.

WHEREFORE, Comrie prays that this Court enter judgment in his favor and against those Defendants, jointly and severally, in an amount to be established by the evidence, plus interest and costs.

## COUNT IV
### (Severance Pay)

42. Comrie adopts and realleges paragraphs 1-29 as paragraph 42 of this Count IV.

43. This count is brought against Defendants IPSCO, IE Inc. and SSAB. Comrie has substantially performed all the conditions of his employment contract under Canadian law, and

was constructively dismissed, which would entitle him to receive notice or severance pay in lieu of notice of approximately 30 months. Defendants have breached this obligation.

WHEREFORE, Comrie prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award damages, interest, costs, and other appropriate relief.

JOHN W. COMRIE

By /s/ Randall L. Mitchell

Randall L. Mitchell
Paul E. Lehner
Adducci, Dorf, Lehner, Mitchell
 & Blankenship, P.C.
150 N. Michigan Avenue, Suite 2130
Chicago, Illinois 60601
(312) 781-2800

Thomas R. Meites
Paul W. Mollica
Meites, Mulder Mollica & Glink
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 263-0272

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable by a jury.

JOHN W. COMRIE

By /s/ Randall L. Mitchell

## **CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Plaintiff, certifies that on August 18, 2008, he caused a copy of the foregoing First Amended Complaint to be served by ECF transmission, on:

> William G. Miossi
> Jonathan E. Rosemeyer
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL 60601
>
> Mark E. Schmidtke
> Ogletree, Deakins, Nash, Smoak &
>  Stewart, P.C.
> 20 South Clark Street
> Chicago, IL 60603

/s/ Randall L. Mitchell