UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN W. COMRIE,

    Plaintiff,

v.

No. 08-cv-03060

Judge John W. Darrah

IPSCO INC., a Canadian Corporation;
IPSCO ENTERPRISES INC., a Delaware
Corporation; SSAB SVENSKT STAL AB, a
Swedish Corporation; IPSCO
ENTERPRISES INC. U.S.
SUPPLEMENTAL EXECUTIVE
RETIREMENT PLAN; and IPSCO INC.
BENEFITS COMMITTEE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff, John W. Comrie, filed suit against Defendants, IPSCO Inc., IPSCO Enterprises Inc., SSAB Svenskt Stal AB ("SSAB AB"), IPSCO Enterprises Inc. U.S. Supplemental Executive Retirement Plan ("U.S. SERP"), and IPSCO Inc. Benefits Committee ("PBC").[1] Plaintiff alleged a violation of the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I), breach of contract (Count II), liability under a promissory estoppel theory (Count III), and failure of Defendants to satisfy their obligations under foreign law (Count IV). Before the Court is Defendants' Partial Motion to Dismiss and for a More Definite Statement. Defendants ask the Court to dismiss Counts II & III of Plaintiff's First Amended Complaint and also to require Plaintiff to provide a more definite statement regarding the Canadian law basis for Count IV. Furthermore, Defendants ask the Court to

---

[1] The parties variously refer to Defendant PBC as "IPSCO Inc. Benefits Committee" and "IPSCO Inc. Pension Benefits Committee." Throughout this Memorandum Opinion and Order, the Court will refer to this entity as "PBC."

dismiss Plaintiff's First Amended Complaint against SSAB AB for lack of personal jurisdiction. Because Defendants' motion actually contains three different motions, the Court will address each individually.

## BACKGROUND

Plaintiff began working for IPSCO Inc. as an attorney on July 15, 1980. At that time, Plaintiff was a Canadian citizen and resident and worked at IPSCO Inc.'s corporate headquarters in Regina, Saskatchewan, Canada. Starting in 1985, Plaintiff served as a corporate officer in addition to his duties in the corporate legal department. Early in 1998, IPSCO Inc. decided to move its corporate headquarters to Lisle, Illinois. On December 6, 1998, Plaintiff was promoted to Vice President, Chief Legal Officer, and Secretary. Concomitant with this promotion, Plaintiff was asked to relocate to Illinois.

In April 1999, Plaintiff discussed his relocation to the United States with Edwin Tiefenbach, then-Chief Financial Officer of IPSCO Inc. and IPSCO Enterprises Inc. Plaintiff also discussed his relocation with Alan Harris, then-Director of Compensation and Benefits for IPSCO Inc. and IPSCO Enterprises Inc. Both Tiefenbach and Harris promised Plaintiff that if he moved to the United States, under IPSCO Inc.'s executive pension plan arrangements, Plaintiff would not suffer a material reduction of the retirement benefits that he would have received had he remained in Canada. Specifically, Plaintiff alleges that on April 19, 1999, both Tiefenbach and Harris promised him that if he agreed to relocate to the United States, Plaintiff would:

> (1) get full credit for his years of service for benefit purposes regardless of whether he earned them in Canada or the United States;
>
> (2) become a participant in U.S. SERP; and

2

(3) not experience a material difference in benefits as compared to those he would have received from his Canadian Plan.

On April 23, 1999, Roger Phillips, then-President of IPSCO Inc. and then-Chairman of IPSCO Enterprises Inc., reaffirmed that IPSCO Inc. would honor the assurances made to Plaintiff by Tiefenbach and Harris on April 19, 1999. Plaintiff accepted the promotion and concomitant relocation to Illinois on April 26, 1999. Plaintiff immigrated to the United States on May 24, 1999, and had lived in the United States continuously since. He became a United States Citizen in October 2006.

Plaintiff's tenure as an employee of IPSCO Inc. ended on July 31, 2007, when he was demoted and subsequently "involuntarily retired." After this "involuntary retirement," Plaintiff applied for retirement benefits under U.S. SERP. In response, Plaintiff received a letter from the PBC, which substantially rejected his claim for benefits. Plaintiff appealed that decision but, on May 23, 2008, received another letter from PBC, upholding its original determination. Plaintiff alleges that PBC based its decisions on a document that Plaintiff had never seen before. Plaintiff also alleges that PBC miscalculated his years of service under U.S. SERP, used the wrong currency conversion, and disregarded the promises made to Plaintiff prior to his relocation to the United States.

## DEFENDANTS' MOTION TO DISMISS COUNTS II AND III

### *Legal Standard*

The Court may dismiss a plaintiff's claim if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept Plaintiff's well-pleaded facts as true and must draw all inferences in favor of Plaintiff. *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004). The Court may dismiss claims pursuant to Fed. R. Civ. P. 12(b)(6) if those claims are preempted by another law. *See Village of DePue v. Exxon Mobil*

*Corp.*, 537 F.3d 775, 789 (7th Cir. 2008); *Monroe v. Mo. Pac. R.R. Co.*, 115 F.3d 514, 520 (7th Cir. 1997).

## Analysis

Defendants argue that Comrie's claims for breach of contract (Count II) and liability under promissory estoppel (Count III) are preempted by Comrie's ERISA claim (Count I) and, therefore, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In response, Comrie cites ERISA § 514(a), 29 U.S.C. § 1144(a), and argues that ERISA only preempts *state* laws, not *foreign* laws.

Therefore, it must be determined whether Counts II and III sound in Illinois state law or Canadian foreign law. If Counts II and III sound in Illinois state law, they must be dismissed because ERISA preempts all state-law causes of action relation to an employee benefit plan. *Aetna Health Inc. v. Calad*, 542 U.S. 200, 216 (2004) ("Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim."); *Valone v. CNA Fin. Corp.*, 375 F.3d 623, 638 (7th Cir. 2004) ("Recent decisions of both this circuit and the Supreme Court have held that state law claims, such as the plaintiffs' breach of common law contract claim here, are pre-empted by ERISA."); *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 957 (7th Cir. 2004) ("ERISA provides a remedy for plan participants wrongfully denied benefits. However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA.").

The parties agree that subject-matter jurisdiction over Counts II and III rests on both diversity of citizenship jurisdiction, 29 U.S.C. § 1332(a)(1)–(2) (2006), and supplemental

jurisdiction, 29 U.S.C. § 1367. "Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law." *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004) (*Hinc*) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000)). "Illinois has adopted the 'most significant contacts' test proffered by the Restatement (Second) of Conflicts § 188 (1971) in deciding choice-of-law disputes with respect to contractual issues." *Hinc*, 382 F.3d at 719 (citing *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996), and *Wildey v. Springs*, 47 F.3d 1475, 1481 (7th Cir. 1995) (*Wildey*)). "[T]he contacts relevant to the choice-of-law decision include 'the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties.'" *Hinc*, 382 F.3d at 719 (quoting *Wildey*, 47 F.3d at 1483).

"The place of contracting is the jurisdiction wherein is accomplished the last act necessary to give validity to the contract." *Hinc*, 382 F.3d at 719 (quoting *Ill. Tool Works, Inc. v. Sierracin Corp.*, 479 N.E.2d 1046, 1051 (Ill. App. Ct. 1985)). In this case, the parties formed the alleged contract in Canada. Indeed, accepting the allegations of the complaint, the promises made to Plaintiff were a condition precedent to Plaintiff's relocation to the United States. Thus, the place of contracting must be Canada. Similarly, the place of negotiation must also be Canada. Both of these factors favor applying Canadian law.

The place of Plaintiff's performance was primarily Illinois. His relocation to Illinois and subsequent continued work was a consequence of his entering into the alleged contract with IPSCO Inc. This factor favors applying Illinois law. Generally speaking, in the case of a contract for the performance of services, the law of the place of performance will apply unless some other state has a more significant relationship to the transaction and the parties.

Restatement (Second) of Conflicts § 196. Thus, it is significant that Plaintiff's performance was primarily in Illinois.

The domicile, residence, place of incorporation, and business of the parties weighs in favor of applying Canadian law. Plaintiff was a Canadian citizen and resident when he entered into the alleged contract with IPSCO Inc., a Canadian corporation. Indeed, although Plaintiff became a United States resident soon after entering the alleged contract with IPSCO Inc., he did not become a United States citizen until more than seven years after he contracted with IPSCO Inc. Plaintiff only worked for IPSCO Inc. as a United States citizen for about nine months before his employment with IPSCO Inc. ended.

Balancing these contacts, and taking into account the importance of Plaintiff's performance in Illinois, the contract in this case has its "most significant contacts" with Canada. With the exception of the place of Plaintiff's performance, *every other* factor favors applying Canadian law. Canada has a more significant relationship to the parties' transaction than Illinois and, therefore, under Illinois choice-of-law principles, the laws of Canada must apply to Counts II and III.

Because Counts II and III sound in Canadian law, the question is whether ERISA preempts *foreign* law claims as well as *state* law claims. The parties do not cite, nor has the Court's own research uncovered, any authority for the proposition that Congress intended to preempt foreign law claims when it passed ERISA. It is true that Congress intended the preemption provision of ERISA to "apply in its broadest sense." 120 Cong. Rec. 29933 (1974) (statement of Sen. Williams). Indeed, the Supreme Court has recognized the preemption provision of ERISA as "deliberatively expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41,

45–46 (1987). These statements, however, refer to ERISA's preemptive effect on *state* law, not *foreign* law.

To be sure, "Congress has the authority to enforce its laws beyond the territorial boundaries of the United States." *Equal Employment Opportunity Comm'n v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (*Aramaco*). Determining whether Congress intended to exercise that authority and preempt foreign laws with ERISA "is a matter of statutory construction. *Aramaco*, 499 U.S. at 248. "It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Aramaco*, 499 U.S. at 248 (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285(1949) (*Foley Bros.*)). "This 'cannon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained.'" *Aramaco*, 499 U.S. at 248 (quoting *Foley Bros.*, 336 U.S. at 285) (omission in original). "It is based on the assumption that Congress is primarily concerned with domestic conditions." *Foley Bros.*, 337 U.S. at 285. Further, "[i]t serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Aramaco*, 499 U.S. at 248. Applying this cannon of construction requires the Court to "see whether 'language in the [relevant Act] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control.'" *Aramaco*, 499 U.S. at 248 (quoting *Foley Bros.*, 336 U.S. at 285). Thus, "unless there is 'the affirmative intention of the Congress clearly expressed,'" the Court must presume that ERISA is "primarily concerned with domestic conditions." *Aramaco*, 499 U.S. at 248 (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957) and *Foley Bros.*, 336 U.S. at 285).

7

The statutory text of ERISA does not clearly preempt foreign law, only state law. As mentioned above, no authority has been found to support the proposition that ERISA preempts foreign law. Thus, it must be presumed that Congress did not intend ERISA to preempt foreign law.

It is especially instructive that Congress, in ERISA, explicitly stated that "the provisions of this title and Title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a) (2006), because Congress had been faced with this very issue in the past. In 1991, the Supreme Court addressed the issue of whether Title VII of the Civil Rights Act of 1964 applies extraterritorially to U.S. employers who employ U.S. citizens abroad. *Aramaco*, 499 U.S. at 246. The Court held that because Congress did not explicitly state that Title VII was meant to apply extraterritorially, the plaintiff was unable to overcome the presumption against extraterritorial application. *Aramaco*, 499 U.S. at 248–55. On November 21, 1991, Congress responded by passing the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. Section 109 explicitly made Title VII applicable to U.S. employers who employ U.S. citizens abroad. Civil Rights Act of 1991, Pub. L. No. 102-166, § 109(b)(1)(B), 105 Stat. 1071, 1077; *Kennedy v. Fritsch*, 796 F. Supp. 306, 309 (N.D. Ill. 1992) ("[S]ection 109 . . . [was] meant to overrule [*Aramaco*]."); *Greenwood v. Stone*, 136 F. Supp. 2d 368, 370 n.1 (W.D. Pa. 1992) ("Section 109 reversed [*Aramaco*], by mandating that Title VII applies to U.S. companies operating outside of the territorial jurisdiction of the United States."). Thus, Congress is well aware of (1) its authority to legislate extraterritorially and (2) how to clearly manifest its intent to legislate extraterritorially. Although ERISA was originally enacted in 1974, Congress has had ample time and opportunity to amend ERISA to apply extraterritorially, yet it has declined to do so.

The Court's conclusion that ERISA does not preempt foreign law does not, however, dispose of the issue entirely. Although not raised by the parties, the Court must still consider subject-matter jurisdiction over the claims arising under Canadian law. Plaintiff's ERISA claim invokes this Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a)(1)–(2) (2006). Plaintiff alleges that its non-ERISA claims are properly before this Court both under diversity of citizenship, 28 U.S.C. § 1332(a)(1)–(2), and supplemental jurisdiction, 28 U.S.C. § 1367.

This is an action between citizens of different states and subjects of a foreign state. The matter in controversy exceeds $75,000, exclusive of interests and costs. Thus, the parties have properly invoked this Court's diversity jurisdiction for the non-ERISA claims. Further, the United States Court of Appeals for the Seventh Circuit has recognized the resolution of foreign claims in federal district court in the exercise of its supplemental jurisdiction. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003) (recognizing that in the appropriate circumstances, Canadian law claims can be heard in United States federal court).

The non-ERISA claims of Counts II and III are foreign law claims which are not preempted by ERISA. The Court has subject-matter jurisdiction over these claims under both its diversity jurisdiction and its supplemental jurisdiction. Thus, Counts II and III may not be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants' motion to dismiss Counts II and III is denied.

MOTION FOR A MORE DEFINITE STATEMENT AS TO COUNT IV

Defendants argue that Plaintiff's reference to "Canadian law" in Count IV of its First Amended Complaint is vague. Defendants claim that they "cannot frame an appropriate response to Count IV" due to this alleged ambiguity. Defendants ask the Court to require Plaintiff to provide a more definite statement as to Count IV pursuant to Fed. R. Civ. P. 12(e).

The Court denied Defendants' motion for a more definite statement in court on September 24, 2008. That ruling will not now be upset. Defendants' motion for a more definite statement as to Count IV is denied.

MOTION TO DISMISS SSAB AB FOR LACK OF PERSONAL JURISDICTION

*Legal Standards*

The Court may dismiss a claim against a defendant if the plaintiff lacks personal jurisdiction against the defendant. Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of demonstrating personal jurisdiction." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000) (*Cent. States*). "[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Purdue Research Found. v. Sanofi-Synthelabo, Inc.*, 338 F.3d 773, 782 (7th Cir. 2003) (*Purdue Research Found.*) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The Court may, however, consider extrinsic evidence, including affidavits submitted by the parties, prior to trial on the merits. *Nelson v. Park Indus. Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (*Nelson*). "In evaluating whether the *prima facie* standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research Found.*, 338 F.3d at 782 (quoting *Nelson*, 717 F.2d at 1123)). Still, the Court may accept any unrefuted facts contained in Defendants' affidavits as true. *ABN Amro, Inc. v. Capital Int'l Ltd.*, No. 04-CV-3123, 2008 WL 4286984, at *3 (N.D. Ill. Sept. 16, 2008).

"A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident 'only if a court of the state in which it sits would have such jurisdiction.'" *Klump v.*

*Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (quoting *Wilson v. Humphrey's (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990)). The Illinois long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent of due process consistent with the United States Constitution. 735 Ill. Comp. Stat. 5/2-209 (c) (1994); *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008).

> The Due Process Clause of the Fourteenth Amendment limits when a state may assert in personam jurisdiction over nonresident individuals and corporations. A defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" What that standard means in a particular case depends on whether the state asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." General jurisdiction, meanwhile, is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has "continuous and systematic general business contacts" with the forum.

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (citations omitted). Of importance to this case, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States*, 230 F.3d at 943.

### Analysis

Defendants argue that the Court lacks personal jurisdiction as to Defendant SSAB AB, a Swedish corporation and the Court should dismiss Plaintiff's First Amended Complaint against SSAB AB entirely. In response, Plaintiff claims that SSAB AB has "purposefully avail[ed] itself of the State's laws and benefits" for purposes of personal jurisdiction. *Japax, Inc. v. Sodick Co.*, 542 N.E.2d 792, 798 (Ill. App. Ct. 1989).

11

Plaintiff alleges the following to support its assertion that SSAB AB is subject to personal jurisdiction in this case: (1) SSAB AB, since acquiring IPSCO Inc., has maintained an office in Lisle, Illinois; (2) SSAB AB and IPSCO Inc. had interlocking officerships; (3) SSAB AB had employees working in Lisle, Illinois; (4) IPSCO Inc. held itself out to the public as "a division of SSAB" or as SSAB AB's "North American Division Office"; (5) SSAB AB included IPSCO Inc. in its consolidated financial statement for 2007; and (6) SSAB AB controlled "significant decisions regarding the business of IPSCO, Inc., including those concerning Comrie."

Defendants presented a Declaration of Marco Wirén, SSAB AB's Vice President of Business Control. In his Declaration, Mr. Wirén states that "SSAB AB, IPSCO Inc., and SSAB Enterprises, LLC are separate and independent corporate entities. They are managed by separate and independent individuals, maintain their separate books and records, and they maintain separate corporate bank accounts." Further, Mr. Wirén states that "IPSCO Inc. . . . ha[s] retained [its] corporate autonomy since SSAB AB's purchase of [its] corporate stock." Plaintiff does not rebut any of these assertions with any evidence, save for his assertions in the complaint. Thus, the Court finds that IPSCO Inc. and SSAB AB have substantially observed corporate formalities and, therefore, SSAB AB cannot be subject to personal jurisdiction in this case under this first theory of constitutional due process. *See Cent. States*, 230 F.3d at 943.

SSAB AB might still be subject to personal jurisdiction in this case under the second theory of constitutional due process if it exercises an unusually high degree of control over IPSCO Inc. *See Cent. States*, 230 F.3d at 943. Plaintiff alleges, in his First Amended Complaint, that SSAB AB has maintained an office in Lisle, Illinois. Defendants respond with Mr. Wirén's Declaration, which states that "SSAB AB is not registered to do business in Illinois, does not maintain any offices, facilities, bank accounts or personnel in Illinois, and does not conduct

regular business in Illinois." Plaintiff has not rebutted this fact. Indeed, Plaintiff has only submitted a website printout that lists one of SSAB AB's "North American Division Offices" as the Lisle, Illinois office of IPSCO Inc. Tellingly, this website printout is not from SSAB AB's website; instead, it is from IPSCO Inc.'s website. Such a listing is "simply [an] incident[] of a parent-subsidiary relationship," *Erie Foods Int'l v. Apollo Group*, No. 04-C-6610, 2006 WL 932344, at *4 (N.D. Ill. Apr. 10, 2006) (*Erie Foods*), and does not indicate a high degree of control. The same can be said of SSAB AB and IPSCO Inc.'s interlocking officerships, IPSCO Inc. appearing on a SSAB AB consolidated financial statement for 2007, and IPSCO Inc. appearing as a "division" of SSAB AB. *See Erie Foods*, 2006 WL 932344, at *4; *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, No. 00-C-2447, 2003 WL 21542491, at *4–5 (N.D. Ill. July 3, 2003).

Plaintiff's assertion that SSAB AB controlled IPSCO Inc.'s decisions is merely a bald assertion. Mr. Wirén explicitly refutes this assertion in his Declaration, "SSAB AB did not dictate to either IPSCO Inc., IPSCO Enterprises (US), LLC or its successor, SSAB Enterprises, LLC the manner in which Mr. Comrie's employment, resignation, and subsequent claim for benefits should be handled, nor does it dictate to either company how to manage their other daily affairs." Again, Plaintiff does not refute this statement. On this record, SSAB AB does not exert so high a degree of control over IPSCO Inc. that SSAB AB should be subject to personal jurisdiction. Thus, Plaintiff has not made a *prima facie* showing of personal jurisdiction over SSAB AB in this case. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint as to SSAB AB for lack of personal jurisdiction is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. The Court denies Defendants' Motion to Dismiss Counts II and III. The Court denies Defendants' Motion for a More Definite Statement as to Count IV. The Court grants Defendants' Motion to Dismiss SSAB AB for lack of personal jurisdiction.

Dated: December 10, 2008

JOHN W. DARRAH
United States District Court Judge